Filed 12/24/24  P. v. Copon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN RODOLFO COPON,<br><br>    Defendant and Appellant. | H051607<br>(Santa Clara County<br> Super. Ct. No. C1225419) |

## I.  INTRODUCTION

Pursuant to a plea agreement, defendant Benjamin Rodolfo Copon pleaded guilty in 2013 to one count of willful, deliberate, and premeditated attempted murder (Pen. Code, §§ 187, 189, 664, subd. (a)).[1]  Defendant also admitted sentencing enhancements that he personally and intentionally discharged a firearm and proximately caused great bodily injury (§§ 12022.53, subd. (d), 12022.7), that he suffered a prior serious felony conviction (§ 667, subd. (a)), and that he suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12)).  The trial court sentenced defendant to 39 years to life, consecutive to five years.

In 2023, defendant petitioned under section 1172.6 to have his attempted murder conviction vacated and to be resentenced.  The trial court denied the petition without

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

issuing an order to show cause, concluding that defendant failed to establish a prima facie case of eligibility for relief. Defendant asserts that the trial court erred in dismissing his petition at the prima facie stage because the trial court erroneously relied on the preliminary hearing transcript and documents reflecting a codefendant's change of plea. For the reasons outlined below, we will affirm the trial court's ruling because the record of conviction conclusively establishes defendant's ineligibility for section 1172.6 relief.

## II. BACKGROUND

A complaint charged defendant and codefendant Marcus Castaneda each with one count of willful, deliberate, and premeditated attempted murder (§§ 187, 189, 664, subd. (a)) and one count of attempted second degree robbery (§§ 211, 212.5, subd. (c), 664, subd. (a)). With regard to both counts, the complaint alleged that defendant personally and intentionally discharged a firearm causing great bodily injury upon the victim (§§ 12022.53, subd. (d), 12022.7), and that Castaneda was armed with a firearm (§ 12022, subd. (a)(1)). The complaint also alleged that defendant suffered a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12), and that both defendant and Castaneda served prior prison terms (former § 667.5, subd. (b)).

The victim of the alleged attempted murder and attempted robbery testified at defendant's and Castaneda's preliminary hearing. The victim testified that he met defendant and Castaneda "a week or two" before the charged offenses when the victim's sister introduced them. The victim testified that he purchased speaker equipment from defendant and Castaneda, that he paid for the equipment with cash and methamphetamine, and that the three used methamphetamine together. During this first meeting, the victim testified, defendant and Castaneda saw the victim had a large amount of cash in his wallet. After this first meeting, the victim testified, he sold drugs to Castaneda on three occasions and he also sold defendant an "8-ball" for $120. The victim testified that defendant then called him asking for a refund, stating he was not

2

satisfied with the quality of the product purchased. The victim testified that defendant called him "three to four times leaving voice mails" stating that the victim "needed to make it right." The victim testified that he later talked to Castaneda, who stated he was "interested in making a large purchase" of methamphetamine, which the victim testified made him "uncomfortable" and "seemed fishy" in part because of defendant's dissatisfaction over the earlier drug purchase. However, the victim testified that he agreed to meet Castaneda to conduct the transaction.

The victim testified that he saw Castaneda pull up in a car, that he saw Castaneda's face and recognized him, and that Castaneda remained in the car. The victim testified that as he was looking at Castaneda sitting in the car, somebody approached the victim on foot, telling the victim to " 'break yourself' " (which the victim said he understood meant to hand over everything the victim had) and brandishing a "humongous" firearm. The victim testified that this person wore a bandana covering his nose and mouth and a hood, but that as this person "came really close" to him (about two feet away), he recognized defendant's eyes and "already knew who he was." The victim testified that he used methamphetamine that day, though "[n]ot very much." He testified that although the shooting took place at night, he "could see without any problem."

The victim testified that he attempted to lunge for the firearm, at which point defendant shot him twice in the left leg and once in the right leg. The victim testified that as he fell, defendant then shot him twice in the back. The victim testified that defendant then ran toward the car Castaneda was driving, but as the victim was yelling at defendant, defendant reapproached the victim and shot him in the neck.

Pursuant to a plea agreement, defendant pleaded guilty in 2013 to the attempted murder count, admitting allegations that he committed the attempted murder willfully, deliberately, and with premeditation, and that he personally and intentionally discharged a firearm causing great bodily injury upon the victim. Defendant stipulated that the preliminary hearing transcript served as the factual basis for his guilty plea. In return for

3

his plea admissions, the attempted robbery count and its personal and intentional discharge of a firearm allegation were dismissed at sentencing, along with the prior prison term allegation.

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, imposing "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 added what is now designated as section 1172.6, which permits a person convicted of murder under an imputed malice theory to petition the sentencing court to vacate the conviction and to be resentenced. Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) "[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).)

Defendant filed a section 1172.6 petition in 2023 seeking to have his attempted murder conviction vacated and to be resentenced. The prosecution opposed the petition, asserting that defendant was ineligible for relief because he "was a direct perpetrator and the *lone* shooter" in the premeditated attempted murder of the victim. The prosecution's opposition attached several documents for the trial court's consideration. These documents included the transcript from the preliminary hearing of defendant and Castaneda, and two minute orders that showed Castaneda pleaded guilty to the attempted second degree robbery count and admitted the armed with a firearm allegation, with the attempted murder count being dismissed at sentencing.

Defendant replied to the prosecution's opposition, asserting that the trial court could not consider the preliminary hearing transcript or the minute orders related to Castaneda's change of plea in determining whether defendant made a prima facie case for section 1172.6 relief, and that without considering these documents, the record of

4

conviction did not conclusively establish his ineligibility for relief. The prosecution then moved to submit the transcript of defendant's guilty plea proceeding for the trial court's consideration. The prosecution and the defense then submitted supplemental briefing, with the prosecution asserting that it was proper for the trial court to consider the preliminary hearing transcript in determining whether defendant established a prima facie case for relief, and the defense asserting that the trial court could not consider the preliminary hearing transcript.

The trial court denied the petition at the prima facie stage without issuing an order to show cause. The trial court took judicial notice of all the documents the prosecution submitted, including the preliminary hearing transcript and the minute orders reflecting Castaneda's change of plea. In a written ruling, the trial court concluded: "The record of conviction shows that [defendant] is ineligible for resentencing as a matter of law. The undisputed evidence at the preliminary hearing was clear that [defendant] was the actual and only shooter in the attempted murder. [Defendant] was a direct perpetrator and the lone shooter in the pre-meditated attempted murder of [the victim]. Not only did [defendant] admit that with premeditation and deliberation he personally discharged a firearm that resulted in the infliction of gross bodily injury to the named victim, the preliminary transcript, which is part of the record of conviction, and which [defendant's] counsel asserted was the factual basis of his plea, the uncontroverted testimony of the victim at the preliminary hearing, clearly establishes that [defendant] was the sole shooter in this crime and is ineligible for resentencing as a matter of law."

This appeal followed.

### III.    DISCUSSION

Defendant contends that the trial court erred in denying his petition without issuing an order to show cause and conducting an evidentiary hearing. He asserts that the trial court erred in considering the preliminary hearing transcript and the minute orders reflecting Castaneda's change of plea and that without these documents, his record of

5

conviction does not conclusively establish that he is ineligible for section 1172.6 relief. The Attorney General responds that the trial court properly considered these documents, but that even without these documents, defendant's plea admissions independently establish his ineligibility for relief as a matter of law.

### A. *Legal Principles and Standard of Review*

Under section 1172.6, "[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts" when all of certain conditions apply. (*Id*., subd. (a).) Under section 1172.6, "the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 [citation]." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) After the parties have had the opportunity to submit briefings on a section 1172.6 petition, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Id*., subd. (c).) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) "[T]he prima facie inquiry under subdivision (c) [of section 1172.6] is

6

limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Ibid.*)  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citations.]" (*Strong*, *supra*, 13 Cal.5th at p. 708.)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record.  [Citation.]  And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense.  If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).)

"Attempted murder is defined as a ' "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." ' [Citation.] A specific intent to kill requires express malice.  [Citation.]  Implied malice cannot support a conviction of attempted murder.  [Citation.]" (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456 (*Rodriguez*).)

In 2014, the California Supreme Court held that "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine." (*People v. Chiu* (2014) 59 Cal.4th 155, 158–159 (*Chiu*).)

Senate Bills 1437 and 775 followed this decision. "Prior to the enactment of Senate Bills Nos. 1437 . . . and 775 . . . the natural and probable consequences doctrine provided an avenue for finding an aider and abettor acted with malice. [Citation.] Under this doctrine, an aider and abettor who lacked a specific intent to kill could be found guilty of attempted murder solely due to their participation in a different target crime, if attempted murder was the natural and probable consequence of the target crime." (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 456.) " '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." [Citation.] The accomplice need not actually foresee the nontarget offense. "Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " ' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 449.)

Section 1172.6, subdivision (a) provides that a person convicted of "attempted murder under the natural and probable consequences doctrine" may petition to have his or her attempted murder conviction vacated and to be resentenced on any remaining counts. Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine. [Citation.]" (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Because the natural and probable consequence applies only to aiders and abettors, where a section 1172.6 petitioner was convicted as "the sole and actual perpetrator of the attempted murder," the petitioner "is ineligible for resentencing as a matter of law. [Citations.]" (*People v. Patton* (2023) 89 Cal.App.5th 649, 657, review granted June 28, 2023, S279670 (*Patton*).)

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage.  [Citation.]"  (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200 (*Bodely*).)

### B.  Analysis

#### 1.  Defendant's plea admissions alone do not demonstrate his ineligibility for section 1172.6 relief.

The Attorney General asserts that defendant's plea admissions independently and conclusively establish that defendant is ineligible for section 1172.6 relief, without reference to the preliminary hearing transcript or the minute orders reflecting Castaneda's change of plea.  We cannot conclude as a matter of law that defendant's plea admissions alone conclusively establish his ineligibility for section 1172.6 relief.

Defendant's guilty plea to willful, deliberate, and premeditated attempted murder does not establish his ineligibility for section 1172.6 relief.  Defendant's plea was entered before the California Supreme Court's 2014 *Chiu* opinion.  At the time of defendant's 2013 guilty plea, the natural and probable consequences doctrine served as a permissible theory for the prosecution to demonstrate premeditated attempted murder culpability if premeditated attempted murder was the natural and probable consequence of the target crime.  Defendant was charged along with a codefendant with two attempt offenses under section 664:  premeditated attempted murder and attempted second degree robbery.  As the California Supreme Court held under the pre-Senate Bill 1437 framework:  "Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense.  It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation."  (*People v. Favor* (2012) 54 Cal.4th 868, 880.)  "Prior to the effective date of Senate Bill No. 1437, the natural and probable consequences doctrine was an available theory of both premeditated and unpremeditated attempted murder.  [Citation.]  The People were not required to

separately plead an aiding and abetting, felony murder, or natural and probable consequences theory. [Citations.]" (*People v. Williams* (2024) 103 Cal.App.5th 375, 388, review granted Sept. 11, 2024, S286314 (*Williams*).) "[U]nder the natural and probable consequences doctrine, an aider and abettor could be found guilty of premeditated attempted murder, even if the aider and abettor did not personally act with premeditation and deliberation, as long as the direct perpetrator acted with premeditation and deliberation. [Citation.]" (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465 (*Ramos*).) Thus, the prosecution in the instant case could have elected to proceed under the natural and probable consequences doctrine to prove defendant's culpability on the premeditated attempted murder count without proving that defendant possessed his own malice aforethought, and defendant could have admitted guilt based on this imputed malice theory.

The Attorney General cites *Ramos* and *People v. Romero* (2022) 80 Cal.App.5th 145 (*Romero*) to argue that defendant's plea to premeditated attempted murder demonstrates that he personally possessed malice. However, the facts in *Ramos* and *Romero* are distinguishable. In *Ramos*, the Court of Appeal affirmed the prima facie denial of the defendant's section 1172.6 petition following the defendant's guilty plea to attempted murder because the defendant made specific admissions as the factual basis for his plea, including that he " 'aided/abetted, with the specific intent to kill, the attempt to kill' " the victim. (*Ramos*, *supra*, 103 Cal.App.5th at p. 463.) The *Ramos* court cited these factual admissions, holding that the combination of these admissions showed that the defendant was guilty under direct aiding and abetting liability, a theory of murder unaffected by recent statutory changes. (*Id.* at p. 466.) Here, defendant made no specific factual admissions in his guilty plea that would conclusively establish that he acted with his own intent to kill as opposed to malice imputed to him through the natural and probable consequences doctrine. In *Romero*, the reviewing court held that in pleading no contest to first degree murder, the defendant "did not merely admit to having committed

murder ' "willfully, unlawfully, and with malice aforethought," ' but rather to having committed murder 'intentionally, deliberately and with premeditation.' " (*Id.* at p. 153.) The court in *Romero* held: "His admission to intentional, deliberate, and premeditated murder establishes that he acted with actual malice sufficient to sustain the murder conviction under the law as amended by Senate Bill No. 1437 . . . ." (*Ibid.*) Here, defendant's plea did not admit that he personally intended to kill the victim. *Romero* was also issued before our state Supreme Court's decision in *Curiel*, which specified that because the natural and probable consequences doctrine is now "an invalid theory," a finding of intent to kill "is only one element" and "does not by itself establish any valid theory of liability." (*Curiel*, *supra*, 15 Cal.5th at pp. 462–463.)

The availability of the natural and probable consequences doctrine to prove premeditated attempted murder means that defendant's plea does not necessarily establish that he acted with his own malice. Defendant here made no specific factual admission that would show he possessed his own malice. "Appellant's guilty plea admitted and established generally the existence of 'intent to kill.' However, it did not admit whether the intent was personal to him or imputed to him. [Citation.] Based on the record of the guilty plea, it was theoretically possible an accomplice intended to kill and the accomplice's intent was imputed to appellant under the natural and probable consequences doctrine." (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 458.) In the instant case, without an admission that defendant acted with the intent to kill, we do not know whether defendant pleaded guilty because he acted with the intent to kill as a direct perpetrator, or whether defendant pleaded guilty because he believed the jury would have convicted him of premeditated attempted murder under the natural and probable consequences doctrine. Thus, we determine that defendant's premeditated attempted murder guilty plea, standing alone, does not demonstrate his ineligibility for section 1172.6 relief as a matter of law.

Defendant's admission to the section 12022.53, subdivision (d) enhancement also does not conclusively establish his ineligibility for section 1172.6 relief. This enhancement alleged that defendant "personally and intentionally discharged a firearm, a(n) handgun, and proximately caused, a great bodily injury, as defined in Penal Code section 12022.7, to [the victim]." Section 12022.53, subdivision (d) provides for an enhanced sentence for a person who, in the commission of a specified felony, "personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7 . . . ." Section 12022.7, subdivision (f) defines great bodily injury as "a significant or substantial physical injury." Accordingly, defendant admitted at his plea hearing that he "personally and intentionally discharged a firearm, a handgun, and proximately caused great bodily injury as defined in Penal Code Section 12022.7" to the victim. This admission does establish that defendant shot the victim. (See *People v. Cole* (1982) 31 Cal.3d 568, 579 ["we conclude that in enacting section 12022.7, the Legislature intended the designation 'personally' to limit the category of persons subject to the enhancement to those who directly perform the act that causes the physical injury to the victim"]; *People v. Harden* (2022) 81 Cal.App.5th 45, 55 ["The natural meaning of 'personally inflicted' is that the defendant [himself or] herself inflicted the injury"].) However, it does not conclusively establish that defendant remains culpable for attempted murder under a currently valid theory. Defendant's admission does not conclusively establish that he was the only shooter, or whether defendant's act of shooting the victim aided and abetted a direct perpetrator under the natural and probable consequences doctrine. In addition, the California Supreme Court has held that in the implied murder context that a section 12022.53, subdivision (d) finding does not, on its own, encompass the requisite mens rea for murder liability under current law. Our state Supreme Court held: "Penal Code section 12022.53, subdivision (d), requires only an intent to discharge a firearm, not subjective awareness of a risk or disregard for life. [Citations.] Thus, a finding under this section is no proxy for the mental component of implied malice

12

murder." (*In re Ferrell* (2023) 14 Cal.5th 593, 604.) Courts of Appeal have similarly held that a section 12022.53, subdivision (d) finding does not establish the necessary mens rea for culpability under current murder law without reference to other facts established by the record of conviction. (See *Williams*, *supra*, 103 Cal.App.5th at p. 388; *People v. Offley* (2020) 48 Cal.App.5th 588, 597–598 (*Offley*).)

Defendant's plea admissions alone thus fail to conclusively establish that he personally acted with malice. While defendant does not posit a scenario in which he could be guilty of premeditated attempted murder while also personally and intentionally discharging a firearm causing great bodily injury and still lack his own malice, we cannot conclude as a matter of law based on the plea admissions alone that defendant personally acted with intent to kill. Theoretically, based on the information and defendant's plea admissions alone, the prosecution could have pursued a conviction for premeditated attempted murder under the natural and probable consequences doctrine, with defendant participating in the target crime of attempted robbery, and with Castaneda's premeditated intent to kill being imputed to defendant. The fact that Castaneda was alleged to have merely possessed a firearm instead of discharging it to cause great bodily injury does not alter this conclusion. "[A] charging decision does not establish any facts as a matter of law. [Citation.]" (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339 (*Estrada*).) Based solely on defendant's plea admissions, we cannot foreclose the possibility that the prosecution could have pursued a conviction of premeditated attempted murder under the natural and probable consequences doctrine.

### 2. The trial court did not engage in impermissible factfinding by considering the preliminary hearing transcript.

Although we conclude that defendant's plea admissions, standing alone, do not conclusively establish his ineligibility for section 1172.6 relief as a matter of law, this does not end our inquiry. "Of course, the trial court may look beyond the abstract of judgment and consider the entire record of conviction . . . in determining whether a

13

petitioner has made a prima facie case of eligibility.  [Citation.]  In many instances, additional information from the record will establish that a defendant's conviction was not based on the natural and probable consequences doctrine, and that the jury must have convicted the defendant on the basis of his [or her] own malice aforethought." (*Offley*, *supra*, 48 Cal.App.5th at pp. 598–599.)  Here, we conclude that the trial court properly considered the preliminary hearing transcript and that this transcript, in conjunction with the remainder of the record of conviction, conclusively establishes defendant's ineligibility for section 1172.6 relief.

We find no error in the trial court's consideration of the preliminary hearing transcript for the limited purpose of establishing that the natural and probable consequences doctrine was not implicated in defendant's guilty plea.  In four opinions, Courts of Appeal have held that a trial court may review a preliminary hearing transcript as part of the record of conviction in determining whether a defendant has made a prima facie case in a section 1172.6 petition, and have used such transcripts to affirm a trial court's denial of a petition at the prima facie stage.  (See *Patton*, *supra*, 89 Cal.App.5th at pp. 657–658 [endorsing trial court's reliance on preliminary hearing transcript as well as transcript of change of plea hearing to demonstrate the defendant was the sole and actual perpetrator of the attempted murder], review granted June 28, 2023, S279670; *People v. Pickett* (2023) 93 Cal.App.5th 982, 988 [record of conviction in a guilty plea may include the preliminary hearing transcript when the transcript reliably reflects the facts of the offense for which the defendant was convicted], review granted Oct. 11, 2023, S281643 (*Pickett*); *People v. Mares* (2024) 99 Cal.App.5th 1158, 1167–1169 [preliminary hearing transcript supports that the defendant was the actual killer acting with no accomplice], review granted May 1, 2024, S284232 (*Mares*); *People v. Muhammad* (Dec. 9, 2024, B334294) ___ Cal.App.5th ___ [2024 Cal.App.LEXIS 786 at p.*13] (*Muhammad*).)  Other Court of Appeal decisions have concluded that prima facie denial based on a preliminary hearing transcript was not appropriate, though they allowed that such

14

consideration may be appropriate in other cases. (See *People v. Davenport* (2021) 71 Cal.App.5th 476, 483 [because the defendant did not stipulate that the preliminary hearing transcript provided the factual basis for his no contest plea, the transcript does not conclusively refute the allegations in the petition] (*Davenport*); *Estrada*, *supra*, 101 Cal.App.5th at p. 340 [the defendant did not stipulate to the preliminary hearing transcript as a factual basis for his plea, but even assuming the trial court could rely on the preliminary hearing transcript, relying on the transcript in this case would constitute impermissible factfinding because the preliminary hearing contained testimony that could potentially suggest multiple perpetrators were involved].)

Two divided Courts of Appeal have taken a different position. In *Williams*, the reviewing court reversed the trial court's ruling denying a section 1172.6 petition at the prima facie stage. (*Williams*, *supra*, 103 Cal.App.5th at p. 406.) The majority held that the preliminary hearing transcript did not conclusively establish that the defendant was convicted of attempted murder under a currently valid theory. (*Id.* at p. 397.) The majority concluded that the purpose of a preliminary hearing is not to determine a defendant's guilt or innocence, that the defense generally lacks incentive and authority to call witnesses, and that the prosecution's trial strategy is not limited to the evidence presented at the preliminary hearing. (*Id.* at pp. 397–398.) Thus, the majority concluded that even when the defendant has stipulated to the preliminary hearing transcript as providing a factual basis for the plea, "the preliminary hearing transcript does not conclusively establish a defendant's guilt, let alone any particular theory of guilt" and "[e]ven where the preliminary hearing evidence suggests the defendant is the actual perpetrator, an information containing a generic charge of murder or attempted murder would still permit the prosecution to proceed at trial under a felony murder, natural and probable consequences, or other imputed malice theory eliminated by Senate Bill No. 1437." (*Id.* at p. 398.) Further, the *Williams* majority concluded that "absent a factual finding or admission regarding the manner in which the offense was committed,

15

even compelling, uncontroverted, and uncontradicted testimony is not *conclusive* of a petitioner's guilt under a specific theory . . . ." (*Id.* at p. 403.) The dissenting justice acknowledged that "it may well be that in many cases, the preliminary hearing transcript will be of limited value given the prohibition against factfinding and weighing of evidence," but the dissent stated that those principles did not control in the case at bar, because "the record of conviction—specifically, the preliminary hearing transcript consisting of eyewitness testimony that was neither inconsistent nor controverted— reflects that petitioner was the shooter and acted alone." (*Id.* at p. 421, fn. 16, dis. opn. of Meehan, J.) The dissent concluded: "Absent any dispute raised on that point, the trial court properly relied on the record of conviction to find against petitioner and dismiss his meritless petition at the prima facie stage." (*Ibid.*)

In *People v. Alazar* (2024) 105 Cal.App.5th 1100 (*Alazar*), the Court of Appeal followed *Williams* in another divided opinion. The reviewing court held that "[a] preliminary hearing transcript . . . cannot 'conclusively establish a defendant's guilt' beyond a reasonable doubt, as required to deny a section 1172.6 resentencing petition. [Citations.]" (*Alazar*, *supra*, at p. 1110.) The dissenting justice asserted that the preliminary hearing transcript is part of the record of conviction that can be considered at the prima facie stage of section 1172.6 proceedings. (*Alazar*, *supra*, at p. 1113 (dis. opn. of Gilbert, P.J.).)

The California Supreme Court has granted review to determine whether a trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny a petition at the prima facie stage. (*People v. Patton*, S279670, Supreme Court Mins., June 28, 2023.) While we await our state Supreme Court's decision on this matter, we conclude—consistent with the majority of the Court of Appeal decisions on this matter—that the trial court did not err under the facts of this particular case in considering the preliminary hearing transcript for the limited purpose of

determining whether the natural and probable consequences doctrine was implicated in defendant's case.

Every published decision except the *Williams* and *Alazar* majorities has concluded that a trial court may consider a preliminary hearing transcript at the section 1172.6 prima facie stage, at least in some situations. Our conclusion that the trial court did not err in considering the preliminary hearing transcript in this case is consistent with the majority of these decisions. The preliminary hearing transcript conclusively establishes that defendant was the sole and actual perpetrator of the attempted murder, as the victim unambiguously testified that defendant shot him in the legs, back, and neck. The preliminary hearing testimony did not raise any implication that Castaneda rather than defendant was the shooter. In this situation, the natural and probable consequences doctrine is not at issue, because the victim unambiguously testified that defendant was not an aider and abettor but the sole and actual shooter. In addition, at the preliminary hearing, the parties' arguments were centered on the victim's identification of defendant as the shooter, not whether defendant could be brought to trial on the natural and probable consequences doctrine. Defendant's counsel argued that the victim's identification of defendant was not reliable, asserting that the victim's testimony that the shooter had his eyes and mouth covered, the victim's testimony that he had only met defendant a limited number of times before, the victim's use of methamphetamine, and broader issues with eyewitness identification generally meant that sufficient evidence to hold defendant to answer did not exist. In response, the prosecutor asserted that the victim accurately identified defendant as the shooter and that defendant had a motive to shoot the victim. The trial court held defendant to answer, concluding that the victim's identification was accurate because the victim identified Castaneda in the car, because Castaneda was found in the car later, and because defendant was a friend of Castaneda. The trial court concluded that "[a] lot of evidence points to the fact it's Mr. Copon and he was correctly I.D.'d that night." At no point did the prosecution argue that defendant's

17

guilt might be based on his role as an aider and abettor; argument solely centered on defendant's role as the sole and only shooter, and the trial court held defendant to answer based on evidence that defendant was the direct perpetrator of the premeditated attempted murder.

Where the uncontradicted facts reflected in the preliminary hearing transcript refuted defendant's conclusory assertion in a section 1172.6 petition that he could not currently be convicted of attempted murder because of changes to sections 188 and 189, consideration of the preliminary hearing transcript at the prima facie stage is appropriate. (See *Patton*, *supra*, 89 Cal.App.5th at p. 657, review granted June 28, 2023, S279670; *Pickett*, *supra*, 93 Cal.App.5th at p. 988, review granted Oct. 11, 2023, S281643; *Mares*, *supra*, 99 Cal.App.5th at pp. 1167–1168, review granted May 1, 2024, S284232; *Muhammad*, *supra*, ___ Cal.App.5th at pp. ___ [2024 Cal.App.LEXIS 786 at pp. *10–13].) Defendant also stipulated that the preliminary hearing transcript formed the factual basis of his plea, satisfying a concern raised in two other decisions. (*Davenport*, *supra*, 71 Cal.App.5th at p. 483; *Estrada*, *supra*, 101 Cal.App.5th at p. 340.) The testimony in the preliminary hearing transcript was clear and uncontradicted, and the parties' arguments were based on a theory of defendant acting as the direct perpetrator of the premeditated attempted murder, not as an aider and abettor. As the sole direct perpetrator, defendant is guilt of premeditated attempted murder under current law and is ineligible for section 1172.6 relief. (See *People v. Hurtado* (2023) 89 Cal.App.5th 887, 889.) Considering the preliminary hearing testimony for this limited purpose, the record of conviction demonstrates as a matter of law that the prosecution did not proceed under the natural and probable consequences doctrine and defendant's plea was not based on this imputed malice theory.

The dissent notes that in the published decisions that have found that use of the preliminary hearing transcript is appropriate in the prima facie stage, "the evidence at the preliminary hearing simply confirmed through truly uncontroverted evidence that the

18

defendants in question were the *sole* perpetrators, with no co-defendants charged with the same murder or attempted murder allegations, and no evidence or theories presented that anyone other than the defendants was involved in the murder or attempted murder." (Dis. opn. of Wilson, J., *post*, at p. 3.) Our dissenting colleague also asserts that the trial court engaged in factfinding in utilizing the victim's preliminary hearing testimony, because the victim's identification of defendant as the shooter was challenged at the preliminary hearing and because the victim's testimony was unreliable. (*Id.* at pp. 4–5.) We find neither point dispositive. It is true that the cases that have held that use of a preliminary hearing transcript is properly considered at the prima facie stage have involved single-defendant cases. However, the salient point in those cases is that the preliminary hearing transcript conclusively showed that the defendant was the sole perpetrator of the offense. (See *Patton*, *supra*, 89 Cal.App.5th at p. 657, review granted June 28, 2023, S279670; *Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted Oct. 11, 2023, S281643; *Mares*, *supra*, 99 Cal.App.5th at p. 1175, review granted May 1, 2024, S284232; *Muhammad*, *supra*, ___ Cal.App.5th at p. ___ [2024 Cal.App. LEXIS at p. *13].) Likewise here, the victim unequivocally testified that only one person—defendant—shot him. There is no requirement to charge or try defendants together, and "a charging decision does not establish any facts as a matter of law," so the existence or nonexistence of a codefendant is not dispositive. (*Estrada*, *supra*, 101 Cal.App.5th at p. 339.) That Castaneda also was charged with attempted murder does not alter the fact that the evidence unambiguously demonstrated that defendant was the sole and actual shooter of the victim. As to the dissent's point that the victim's identification of defendant was challenged at the preliminary hearing and was unreliable, defendant's plea to attempted murder and his admission of personally and intentionally discharging a firearm and proximately causing great bodily injury renders this point inapplicable. (See *Rodriguez*, *supra*, 103 Cal.App.5th at p. 458 ["Appellant cannot use a section 1172.6 resentencing hearing to

relitigate facts already determined, whether by plea, admission, or verdict"].) Defendant's admission was consistent with the victim's preliminary hearing testimony.

Contrary to the dissent's assertion, nothing in the record of conviction evinces that the victim ever changed his position that defendant was the sole and actual shooter. As demonstrated by the argument at the preliminary hearing, the prosecution's theory based on the victim's statement was that defendant was culpable for the attempted murder based on his role as the sole and actual shooter, not based on some theory of imputed malice. Because the People proceeded on this theory, defendant's plea to attempted murder necessarily admitted guilt under this theory. "When a conviction is the result of a plea, no findings have been made as to whether any evidence in the record or allegation is true, except for what the defendant has expressly admitted. Nonetheless, a theory of the crime exists at the time of the conviction by plea. The prosecutor need not declare the People's theory in a charging document, at the preliminary hearing, or at the time of the plea. [Citation.] Yet, . . . in some cases, the record of conviction conclusively establishes the People were advancing only one theory of the crime at the time the defendant entered a plea. Whether or not the facts supporting that theory were actually true, that is the theory of the crime and, once the defendant enters a plea, the theory of the conviction. Whether the People could have landed on a different theory had there been no plea and the case had gone to trial is also not the question, since the defendant *did* enter a plea, and the People created a record that made only one theory available at the time of that plea. If that sole theory is not invalid under current law, the defendant cannot meet the threshold requirement of section 1172.6. . . . [¶] Just as a defendant convicted following a jury trial cannot show eligibility for relief under section 1172.6 by asserting there may have been *other* evidence not adduced at trial that would have allowed the jury to make findings inconsistent with current law, a defendant convicted by plea cannot show eligibility for relief by asserting the People could have prosecuted him based on invalid theories when the record conclusively establishes that at the time of the plea, the People

20

were operating under only one theory of the defendant's guilt, and that theory is still valid under current law. [Citation.]" (*Muhammad*, *supra*, ___ Cal.App.5th at pp. ___ [2024 Cal.App.LEXIS 786 at pp. *8–10, fn. omitted].)[2]

Based on the facts of this case, we conclude that the trial court did not engage in impermissible factfinding by considering the preliminary hearing transcript to deny defendant's petition at the prima facie stage. To the extent that the majority opinions in *Williams* and *Alazar* stand for the position that a trial court may never consider a preliminary hearing transcript as part of its prima facie determination, we respectfully decline to join this position. The California Supreme Court has held that the trial court may look to the record of conviction to determine whether a defendant has made a prima facie showing of eligibility for section 1172.6 relief. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) Our state Supreme Court in *Lewis* held: "The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) The California Supreme Court, in a pre-section 1172.6 case, held that a preliminary hearing transcript is "part of the record of the prior conviction, whether that term is used technically, as

---

[2] The court in *Muhammad* did note that "[t]he charging document charged Muhammad alone, and he was the only defendant entering a plea as reflected in the plea transcript." (*Muhammad*, *supra*, ___ Cal.App.5th at p. ___ [2024 Cal.App.LEXIS 786 at p. *13].) For the reasons discussed above, the fact that a codefendant was charged in the instant case does not alter the conclusion that the record of conviction conclusively establishes that defendant is guilty under a currently valid theory of attempted murder. In addition, the court in *Muhammad* stated: "While not dispositive, the allegations Muhammad admitted as part of his plea further establish the theory of conviction was that Muhammad was the sole, direct perpetrator. Muhammad admitted he personally inflicted great bodily injury on the victim, within the meaning of section 12022.7, subdivision (a). . . . Likewise, Muhammad also admitted he personally used a deadly weapon, a knife, in the commission of the crime, within the meaning of section 12022, subdivision (b)(1))." (*Id*. at pp. *14-15.) Defendant in the instant case admitted a similar allegation of personally and intentionally discharging a firearm and causing great bodily injury.

21

equivalent to the record on appeal [citation], or more narrowly, as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223 (*Reed*).) The court in *Reed* reached this position because: "The transcript falls within even the narrower definition because the procedural protections afforded the defendant during a preliminary hearing tend to ensure the reliability of such evidence. Those protections include the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings." (*Ibid.*) The preliminary hearing transcript is part of defendant's record of conviction, and thus there is no outright prohibition on the trial court considering a preliminary hearing transcript at the prima facie stage. This position is consistent with the underlying purpose of section 1172.6's prima facie inquiry: "to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The "structure" of section 1172.6 "permits trial courts to consult the record of conviction to determine whether the defendant has made out a prima facie case of eligibility . . . ." (*Strong*, *supra*, 13 Cal.5th at p. 715.)

We acknowledge that defendant's stipulation that the preliminary hearing transcript served as the factual basis for his plea did not constitute "a binding admission for all purposes" and that defendant was "not required to personally admit the truth of the factual basis of the plea." (*People v. French* (2008) 43 Cal.4th 36, 50, 52.) We also acknowledge, as the majority in *Williams* observed, that the value of a preliminary hearing transcript may be limited in some cases, because "the preliminary hearing generally offers the defense little incentive to present contrary evidence," because the defense's ability to call witnesses is limited, and because "the prosecution's trial strategy is not limited to the evidence presented at the preliminary hearing." (*Williams*, *supra*,

22

103 Cal.App.5th at pp. 397–398.) However, under the particular facts of the instant case we see no prohibition in the trial court using the preliminary hearing transcript to confirm that the natural and probable consequences doctrine was not at issue in defendant's case. Where the victim clearly and unequivocally testified that defendant was the sole shooter, where the parties' arguments centered on defendant's role as the direct perpetrator of the premeditated attempted murder, and where defendant made plea admissions consistent with the victim's preliminary hearing testimony, no " 'factfinding involving the weighing of evidence or the exercise of discretion' " is necessary to conclude that defendant is ineligible for section 1172.6 relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The majority in *Williams* relied on *Curiel* to hold that "[b]ecause the preliminary hearing evidence does not conclusively establish the elements of attempted murder under a valid theory, it is insufficient to rebut petitioner's allegation that he could not presently be convicted of attempted murder 'because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.]" (*Williams*, *supra*, at p. 398.) However, as the dissenting justice in *Williams* stated: "[W]here a claim of entitlement to relief is limited to the form petition, and the uncontroverted record of conviction by plea refutes the petition allegations and shows the petitioner was the direct perpetrator acting alone, the consequence of extending *Curiel* results in clearly meritless petitions surviving prima facie review and direct perpetrators routinely proceeding to an evidentiary hearing despite a record of conviction that is devoid of any indication that the petitioner was an accomplice convicted under a now invalid theory of liability. In my view, this is not warranted by the statute's language or purpose, or by California Supreme Court precedent." (*Id.* at p. 408, fn. omitted, dis. opn. of Meehan, J.)

Defendant asserts that even if the trial court was permitted to consider the preliminary hearing transcript, it nonetheless engaged in impermissible judicial factfinding because the victim's "account of events was consistent with [defendant's] liability for attempted murder under a natural and probable consequences" theory.

23

However, he does not explain how this could be. The fact that defendant made these plea admissions following the clear and uncontroverted testimony from the victim conclusively establishes that the prosecution's theory was not based on the natural and probable consequences doctrine, and that defendant did not admit guilt based on this theory. In this respect, the instant case is analogous to *Rodriguez*, in which the defendant pleaded guilty to attempted murder and waived a preliminary hearing. (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 455.) The defendant petitioned for section 1172.6 relief, and based on the limited record of conviction with no preliminary hearing transcript, the trial court issued an order to show cause and conducted an evidentiary hearing before denying the petition. (*Rodriguez*, *supra*, at pp. 455–456.) The Court of Appeal affirmed, observing: "Appellant's guilty plea admitted and established generally the existence of 'intent to kill.' However, it did not admit whether the intent was personal to him or imputed to him. [Citation.] Based on the record of the guilty plea, it was theoretically possible an accomplice intended to kill and the accomplice's intent was imputed to appellant under the natural and probable consequences doctrine. But once the theoretical possibility he aided and abetted an accomplice was eliminated by evidence received at the hearing, his guilty plea was an admission of his personal intent to kill. Any other evidence contradicting his admission by plea was irrelevant." (*Id.* at p. 458.) Likewise here, consideration of the preliminary hearing transcript does not involve factfinding. Rather, it eliminates the theoretical possibility left open by defendant's plea admissions that he aided and abetted an accomplice. With this theoretical possibility eliminated, defendant's guilty plea constitutes an admission of his personal intent to kill.

Because the preliminary hearing transcript involved uncontroverted witness testimony, it could serve to rebut the factual allegations in the petition without requiring the trial court to engage in improper factfinding at the prima facie stage. (See *Alazar*, *supra*, 105 Cal.App.5th at p. 1113 (dis. opn. of Gilbert, P.J.); *Williams*, *supra*, 103 Cal.App.5th at p. 415 (dis. opn. of Meehan, J.); *Mares*, *supra*, 99 Cal.App.5th at

pp. 1170–1171, review granted May 1, 2024, S284232; *Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted Oct. 11, 2023, S281643; *Patton*, *supra*, 89 Cal.App.5th at p. 658, review granted June 28, 2023, S279670; *Muhammad*, *supra*, ___ Cal.App.5th at pp. ___ [2024 Cal.App.LEXIS at pp. *10–13].)  The trial court did not need to judge the credibility of the victim's testimony to determine that the natural and probable consequences doctrine was not implicated in this matter.  The victim's preliminary hearing testimony and the arguments at the preliminary hearing demonstrated that the prosecution's theory and defendant's admission of guilt were based on defendant's role as a direct perpetrator of the attempted murder, not as an aider and abettor for whom guilt might have been imputed under the natural and probable consequences doctrine.  When defendant's admission that he personally and intentionally discharged a firearm causing great bodily injury is considered in light of the preliminary hearing transcript, this further demonstrates that defendant's guilt was based on his role as the direct perpetrator of the premeditated attempted murder.  (See *People v. Morales* (2024) 102 Cal.App.5th 1120, 1132 [true finding on section 12022.53, subdivision (d) allegation demonstrates section 1172.6 petitioner's ineligibility for relief because "the prosecution's *only* factual basis for the attempted premeditated murder charge was the shooting of [the victim] with an AK-47 semiautomatic rifle" and therefore the defendant was the direct perpetrator of the premeditated attempted murder].)

The record of conviction—including the charging document, defendant's plea admissions, and the uncontroverted nature of the preliminary hearing testimony—demonstrates defendant's ineligibility for relief as a matter of law because the record of conviction excludes the possibility that defendant pleaded guilty under the natural and probable consequences doctrine.  Because we conclude that the preliminary hearing transcript, in conjunction with the remainder of the record of conviction, establishes defendant's ineligibility for section 1172.6 relief, we need not decide whether the minute orders reflecting Castaneda's change of plea are properly considered at the prima facie

25

stage. While the trial court stated that it took judicial notice of these minute orders, we review the trial court's ruling de novo (*Bodely*, *supra*, 95 Cal.App.5th at p. 1200) and we affirm the trial court's ruling even if it rested on different considerations than those we find dispositive in this appeal. (*People v. Turner* (2020) 10 Cal.5th 786, 807.) The record of conviction conclusively establishes that defendant is ineligible for section 1172.6 relief, and thus the trial court did not err in denying defendant's petition at the prima facie stage. (See *Strong*, *supra*, 13 Cal.5th at p. 708.)

## IV. DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

I CONCUR:

_____
DANNER, J.

**People v. Copon**
**H051607**

WILSON, J., Dissenting.

I agree with the majority's conclusion that Copon's plea admission, standing alone, was not enough to find him ineligible for relief under Penal Code section 1172.6.[1] However, I depart from the majority's conclusion that the trial court did not engage in factfinding by relying on the victim's testimony from the preliminary hearing, nor would I find that the record of conviction conclusively established Copon was ineligible for relief as a matter of law. Therefore, I respectfully dissent from the majority's decision to affirm the trial court's denial of Copon's section 1172.6 petition.

The California Supreme Court in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) has made clear that at the prima facie stage under section 1172.6, the trial court's role is "to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Further, "the prima facie inquiry under subdivision (c) [of section 1172.6] is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Ibid.*) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the

---

[1] Unspecified statutory references are to the Penal Code.

petition.  [Citations.]"  (*People v. Strong* (2022) 13 Cal.5th 698, 708.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion." [Citation.]  The " 'prima facie bar was intentionally and correctly set very low.' "  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

As the majority correctly notes, there is currently a split in authority between Courts of Appeal as to whether a preliminary hearing transcript can be utilized in determining whether a defendant has presented a prima facie case for relief under section 1172.6.  I will divide these cases into three groups.  The first set of cases, primarily relied upon by the majority, have found the preliminary hearing transcript was properly considered as part of the record of conviction during the prima facie inquiry when the uncontroverted testimony from the hearing demonstrated that the defendant was ineligible for relief as a matter of law.  (See *People v. Patton* (2023) 89 Cal.App.5th 649, 657–658 [trial court did not err in relying on uncontroverted testimony in the preliminary hearing transcript that demonstrated the defendant was the sole and actual perpetrator of the attempted murder, and there was no argument of an accomplice or a suggestion that the defendant was not the person who shot the victim], review granted June 28, 2023, S279670 (*Patton*); *People v. Pickett* (2023) 93 Cal.App.5th 982, 993–994 [trial court did not err in relying on preliminary hearing transcript and denying petition where there was "no allegation or evidence of an accomplice in the killing" of the victim], review granted Oct. 11, 2023, S281643 (*Pickett*); *People v. Mares* (2024) 99 Cal.App.5th 1158, 1167–1169 [record of conviction, including preliminary hearing transcript, supported "no theory other than" that defendant was the actual killer and acted without an accomplice] review granted May 1, 2024, S284232 (*Mares*).)

A second set of cases found that while consideration of the preliminary hearing may be appropriate in other cases, prima facie denial based on a preliminary hearing transcript was not appropriate based on the facts of the specific matters at hand.  (See

*People v. Davenport* (2021) 71 Cal.App.5th 476, 483 [because the defendant did not stipulate that the preliminary hearing transcript provided the factual basis for his no contest plea, the transcript could not conclusively refute the allegations in his section 1172.6 petition]; *People v. Estrada* (2024) 101 Cal.App.5th 328, 340 [even assuming the trial court could rely on the preliminary hearing transcript, such reliance would constitute impermissible factfinding because the preliminary hearing contained testimony suggesting that multiple perpetrators were involved] (*Estrada*).)

Finally, the third set of cases found that a preliminary hearing transcript could not be utilized to conclusively establish that a defendant is ineligible for section 1172.6 relief as a matter of law. (See *People v. Williams* (2024) 103 Cal.App.5th 375, 397–398 [finding that even when the defendant has stipulated to the preliminary hearing transcript as providing a factual basis for the plea, "the preliminary hearing transcript does not conclusively establish a defendant's guilt"] review granted September 11, 2024, S286314 (*Williams*); *People v. Alazar* (2024) 105 Cal.App.5th 1100, 1109–1110 [agreeing with *Williams* in finding that the preliminary hearing transcript did not demonstrate beyond a reasonable doubt that the defendant was the actual perpetrator of attempted murder or that he was convicted on a theory other than the natural and probable consequences doctrine] (*Alazar*).)

However, in noting that "every published decision except the *Williams* and *Alazar* majorities has concluded that a trial court may consider a preliminary hearing transcript at the section 1172.6 prima facie stage, at least in some situations," the majority does not appear to recognize that in all the published decisions that did consider the transcript, the evidence at the preliminary hearing simply confirmed through truly uncontroverted evidence that the defendants in question were the *sole* perpetrators, with no co-defendants charged with the same murder or attempted murder allegations, and no evidence or theories presented that anyone other than the defendants was involved in the murder or attempted murder. (See, e.g., *Mares, supra,* 99 Cal.App.5th at p. 1175 [noting that the

3

court there "agree[d] with *Pickett* and *Patton* in that they establish a trial court may rely on undisputed facts in the record of conviction showing that the petitioner faced only a theory that he was the actual killer"].) In other words, it appears that in each of the cases cited by the majority, which relied on the preliminary hearing transcript during the prima facie inquiry, the record of conviction conclusively established that the defendant was the sole perpetrator of the offenses without any allegation of an accomplice, and each was therefore ineligible for relief as a matter of law.

That is not the case here. Copon was charged jointly with Castaneda, and as the majority acknowledges, nothing in the information or plea admission prevented the prosecution from pursuing "a conviction for premeditated attempted murder under the natural and probable consequences doctrine, with defendant participating in the target crime of attempted robbery, and with Castaneda's premeditated intent to kill being imputed to defendant." (Maj. op., *ante*, at pp. 13–14.) In addition to the complaint, which charged Castaneda with the same crimes as Copon of attempted murder and attempted robbery, as well as each with related firearm enhancements, the victim's testimony at the preliminary hearing confirmed the presence of at least two people, Castaneda and Copon, leaving open the possibility that someone other than Copon was the actual perpetrator. (See, e.g., *Estrada*, *supra,* 101 Cal.App.5th at p. 340 [presence of multiple perpetrators precluded prima facie determination that the defendant was the actual killer].) Accordingly, I find *Pickett, Patton,* and *Mares* legally and factually inapposite to the case at hand.

Furthermore, I respectfully disagree with the majority that no factfinding was required to utilize the victim's preliminary hearing testimony or that such testimony was unambiguous or uncontroverted. As the majority itself indicates, the victim's identification of Copon as the actual shooter was challenged at the preliminary hearing. (Maj. op., *ante,* at pp. 17–18). Specifically, in arguing the factors delineated in CALCRIM No. 315 regarding eyewitness identification, Copon's counsel at the

4

preliminary hearing asked the magistrate to not make a holding order because the victim's identification of Copon was not reliable for a number of reasons, including: (1) the shooting occurred at midnight and the victim could not describe the lighting present at the time; (2) the victim was under the influence of methamphetamine at the time of the shooting; (3) the victim's attention was divided between two individuals and a firearm; (4) the victim's identification was cross-racial; and (5) the shooter was wearing a hoodie and bandana which covered everything but his eyes. The preliminary hearing testimony and identification by the victim was strenuously contested and challenged by Copon's counsel. It would appear to me that in order to rely upon and deny a petition based upon such testimony, a court reviewing the record at the prima facie stage would be required to disregard these arguments at the preliminary hearing and conclude they are without any merit, even considering the very low standard which has been set to proceed to an evidentiary hearing under section 1172.6.

Moreover, if we are considering the complete record of conviction, which includes the preliminary hearing transcript, the victim's identification of Copon should not be considered in a vacuum. After receiving use immunity for his testimony at the preliminary hearing, the victim testified he had only known Copon and Castaneda for a week prior to the shooting. During their initial meeting, which lasted approximately 30 minutes, they smoked methamphetamine together. The victim subsequently met with Copon one additional time to sell him methamphetamine. The victim further testified that on the night of the shooting, he had arranged to meet with Castaneda (only) to sell methamphetamine. At approximately midnight, the victim saw Castaneda arrive in a vehicle. Shortly thereafter, an individual wearing a hoodie and bandana ran up to the victim on foot. The hoodie and bandana covered all facially identifying features of this individual except part of his forehead and eyes. The person told the victim to "break yourself," then brandished a "humongous" firearm and repeated the same request. Immediately after seeing the firearm, and within seconds of the encounter, the victim

5

lunged "for the gun."  The victim testified that the individual subsequently shot him a total of six times in his legs, back, and neck.  Before being shot, the victim claimed to identify Copon as the shooter by "his eyes" and voice.  The victim also testified that there was a witness named "Dina" who was parked behind "them."  Further, the victim testified he was on parole and had not been forthcoming with the police during his initial interviews because he was concerned about going back to prison and his safety.  On cross-examination, the victim confirmed his interaction with the hooded and masked shooter lasted only seconds,  he was "high" on methamphetamine at the time of the shooting,  it was "kind of dark" outside that night,  and shortly after the shooting, it was possible that the only identification he provided to law enforcement and his girlfriend was that the shooter was an "Asian male."

In light of such a record, to reach a conclusion that Copon was the actual and sole perpetrator with no possible theory of accomplice liability, a court would be required to weigh the evidence presented during direct and cross-examination, engage in a credibility determination (i.e. conclude the victim was testifying accurately and truthfully at the preliminary hearing, notwithstanding testimony or circumstances presented at the same preliminary hearing that might indicate otherwise), and ultimately accept the victim's testimony and identification as true.  In determining that factfinding was not involved in assessing the preliminary hearing testimony, the majority appears to rely on its ultimate conclusion that the victim "unambiguously testified that defendant shot him in the legs, back, and neck" and he testified "clearly and unequivocally."  (Maj. op., *ante,* at p. 23) Respectfully, I disagree with such conclusions based on the preliminary hearing transcript, as this appears to be the type of "weighing of evidence or the exercise of discretion" which the *Lewis* court has indicated is not appropriate at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  I believe such credibility and reliability determinations involving a less than forthcoming witness, as described by the prosecution

at the preliminary hearing, are more properly considered at the evidentiary hearing contemplated by section 1172.6, subdivision (d).

Even going a step further and assuming the trial court did not engage in "factfinding" by considering the victim's testimony at the preliminary hearing, I contend that a review of the entire record would still not _conclusively_ establish that prior to trial, no other individual was alleged to have been involved in the crime such that a natural and probable consequences theory could not have been pursued. As discussed in more detail below, the record of conviction would appear to actually confirm that the prosecution was still considering the possibility that _both Copon and Castaneda acted as shooters_ and was still gathering evidence and witnesses to formulate and support factual and legal theories through the eve of a jury trial for both defendants.

At the beginning of the preliminary hearing, trial counsel for both Copon and Castaneda requested a continuance because the prosecutor had provided them a new statement from the victim that morning. The prosecutor acknowledged that discovery was "ongoing" and the victim had recently given a statement to an investigator with additional information that shed "more light as to what occurred." Such new facts included the victim admitting for the first time that he initially met Copon and Castaneda together at his sister's house, where they all smoked methamphetamine. The victim also provided more details about how the shooting occurred, including how he identified Copon and Castaneda, and admitted for the first time that on the night he was shot he was there to meet Castaneda only. The prosecutor further acknowledged that at the time the victim provided his initial statement to the police, he "was not necessarily so forthcoming with information due to the fact he _was shot by two or by Mr. Copon and his co-part_ and was potentially afraid of being completely forthcoming with the police." (Italics added.) Notwithstanding the evolving statements from the victim, the prosecutor's initial assertion to the magistrate that the victim was "shot by two" (Copon and Castaneda) makes clear that an aider and abettor theory was still very much possible in this case.

7

This is particularly true in light of the prosecutor's additional statement that discovery was "ongoing."

In addition to what the majority considers to be clear and unequivocal testimony from the victim, they also consider that the "parties' arguments centered on [Copon's] role as the direct perpetrator of premeditated attempted murder," and Copon made a plea admission consistent with the victim's preliminary hearing testimony. (Maj. op., *ante*, at pp. 20–31.) Again, more context is useful in determining whether the current record of conviction conclusively establishes Copon is ineligible for relief.

First, Copon filed a section 995 motion following the preliminary hearing because the victim's identification was not reliable and "there was insufficient evidence that [Copon] shot the victim." In January 9, 2013, according to the prosecutor's written response to Copon's section 1172.6 petition in the trial court, the section 995 motion was denied. Second, following the section 995 denial, both Copon and Castaneda proceeded to a joint jury trial. However, on October 17, 2013, the eve of trial, Castaneda entered a plea of guilty to attempted robbery (count 2) for a proposed commitment of five years in state prison, and was thereafter "listed as a cooperating witness." After Castaneda decided to proceed as a "cooperating witness," Copon ultimately entered a guilty plea on October 23, 2013, before jury selection concluded. I do not find it appropriate or necessary to speculate as to why Copon pled days after Castaneda agreed to act as a "cooperating witness" for the prosecution. However, under these circumstances, I do not find that Copon's plea during jury selection for his trial, even in conjunction with the victim's preliminary hearing testimony a year earlier, support a conclusion that Copon is ineligible for section 1172.6 relief as a matter of law.

Therefore, I would find that the trial court erred in relying on the record of conviction to determine Copon was ineligible for relief as a matter of law, reverse the order denying Copon's petition, and remand the matter for an evidentiary hearing. Accordingly, with respect, I dissent.

_____
WILSON, J.

*People v. Copon*
**H051607**